2026 IL App (3d) 240437

Opinion filed July 8, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0437 Circuit No. 19-CF-698 |
| | ) | |
| JUSTIN L. DALCOLLO, | ) ) | Honorable Ann Celine O'Hallaren Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Anderson and Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        A jury convicted defendant, Justin L. Dalcollo, of six counts of aggravated criminal sexual

assault (ACSA) (720 ILCS 5/11-1.30(a)(3), (4), (8) (West 2018)), aggravated kidnapping (*id.* § 10-

2(a)(6)), armed robbery (*id.* § 18-2(a)(2)), and two counts of unlawful use of a weapon by a felon

(*id.* § 24-1.1(a)). The trial court sentenced defendant to an aggregate prison term of 101 years. We

affirmed defendant's convictions and sentence on direct appeal. *People v. Dalcollo*, 2024 IL App

(3d) 220153-U.

¶ 2        In April 2024, defendant petitioned for relief under the Post-Conviction Hearing Act (Act)

(725 ILCS 5/122-1 *et seq.* (West 2024)). He contended, among other things, his due process rights

were violated when he faced trial on charges the State had previously dismissed but never formally reinstated. He also claimed his right to effective assistance of appellate counsel was violated when counsel failed to raise this issue in his direct appeal. The trial court summarily dismissed the petition, finding it frivolous and patently without merit.

¶ 3 We conclude defendant's due process claim is completely rebutted by the trial record and, thus, defendant was not arguably prejudiced by his counsel's failure to raise the issue in his direct appeal. Accordingly, we affirm the trial court's judgment.

¶ 4 I. BACKGROUND

¶ 5 A. Basic Facts of the Offenses

¶ 6 On the afternoon of March 22, 2019, defendant entered M.F.'s vehicle at gunpoint after she left a store in Bloomingdale. Defendant demanded money and, when M.F. said she had none, ordered her to drive to a bank in Glendale Heights. There, defendant directed M.F. to withdraw $300 from an automatic teller machine. M.F. complied and gave defendant the money.

¶ 7 Defendant then ordered M.F. to drive to a casino in Elgin. When they arrived, defendant directed M.F. to the top level of a parking garage and ordered her to park between two vehicles. He then ordered her into the back seat, pulled down her pants to her ankles, and—while holding the gun in her back—attempted to penetrate her anus with his penis before penetrating her vagina with his penis. Traces of suspected semen, later determined to contain defendant's DNA, were recovered from M.F.'s vagina and anus and the outside of her car's center console.

¶ 8 Defendant then ordered M.F. to drive to a train station. First, however, he directed her to stop at a convenience store. Defendant took M.F.'s keys, wallet, and phone, and ordered her into the store with him. Defendant purchased chewing tobacco. They left, and defendant ordered M.F. to drive him to the train station, where he called a cab using M.F.'s phone. While they were

2

waiting, defendant spat his chewing tobacco into a shopping bag in the vehicle. Traces of saliva, later determined to contain defendant's DNA, were recovered from the bag.

¶ 9        After about 10 minutes, the cab picked up defendant and drove him to Chicago. Defendant was arrested the next day in Chicago. He was carrying the gun he used to attack M.F. inside a bag. M.F. identified defendant in a photographic array. Defendant admitted to police that he committed much of this conduct but told them the sex was consensual.

¶ 10                                                B. The Charges

¶ 11        In April 2019, a grand jury returned a 14-count indictment against defendant. The charges included eight counts of ACSA (counts I, IV, V, VI, VII, VIII, IX, X), aggravated kidnapping (count II), armed robbery (count III), unlawful restraint (720 ILCS 5/10-3 (West 2018)) (count XI), aggravated unlawful restraint (*id.* § 10-3.1) (count XII), and two counts of unlawful use of a weapon by a felon (counts XIII and XIV). Four counts of ACSA (counts I, V, VII, and IX) were based on defendant's penetration of M.F.'s vagina. Four counts of ACSA (counts IV, VI, VII, and X) were based on his penetration of M.F.'s anus.[1] Two of the ACSA charges (counts I and IV) were predicated on defendant's use of a firearm during the offenses. The remaining ACSA charges were predicated on the felonies of unlawful restraint (counts V and VI) and aggravated kidnapping (counts VII and VIII) and on the fact that defendant acted in a manner that threatened or endangered M.F.'s life (counts IX and X).

¶ 12        Because of a 15-year sentencing enhancement based on defendant's use of a firearm (*id.* §§ 10-2(a)(6), (b); 11-1.30(a)(8), (d)(1); 18-2(a)(2), (b)) and the mandatory consecutive nature of certain offenses (730 ILCS 5/5-8-4(d) (West 2018)), defendant faced a minimum sentence of 63

---

[1]The Criminal Code of 2012 defines sexual penetration as "any contact, however slight, between the sex organ *** of one person and *** the *** anus of another person." 720 ILCS 5/11-0.1 (West 2018).

years' imprisonment if convicted of all offenses. Absent the imposition of any permissive consecutive sentences (see *id.* § 5-8-4(c)(1)), defendant faced a maximum of 135 years' imprisonment.

¶ 13    Defendant initially pleaded not guilty to all 14 counts.

¶ 14              C. The Parties' Partially Negotiated Plea Agreement

¶ 15    On September 30, 2020, the parties told the court they had reached a partially negotiated plea agreement, and defendant tendered a signed written jury waiver. The State recited the terms. Defendant agreed to plead guilty to one count of ACSA (count I) and armed robbery (count III). In exchange, the State agreed to *nolle prosequi*, or dismiss, the remaining 12 counts of the indictment (counts II and IV through XIV).[2] In addition, the parties agreed the sentences on the two counts would be served consecutively and were both subject to ranges of 21 to 45 years based on the firearm enhancement. The State, however, agreed to cap its sentencing recommendation at 30 years on the armed robbery conviction. Finally, the parties agreed the sentence on the ACSA conviction would be served at 85% and the sentence on the armed robbery conviction would be served at 50% (because of their agreement that no bodily harm occurred during the robbery (see *id.* § 3-6-3(a)(2)(iii), (2.1)).

¶ 16                    D. The Court Accepts Defendant's Guilty Plea

¶ 17    After the State recited the parties' agreement, the court addressed defendant personally and admonished him in accordance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). The court found defendant's plea was voluntary and there existed a factual basis for it. The court accepted defendant's plea, ordered a presentence investigation report, and continued the matter for

---

[2]As we will explain below, a *nolle prosequi*, or nol-pros, is the functional equivalent of a voluntary nonsuit or dismissal in a civil case. *People v. Daniels*, 187 Ill. 2d 301, 312 (1999).

4

sentencing. The court entered a written order stating the terms of the parties' plea agreement, including that counts II and IV through XIV were nol-prossed in exchange for defendant's guilty plea on counts I and III.

¶ 18                           E. Defendant Moves to Withdraw His Guilty Plea

¶ 19        In October 2020, before sentencing, defendant moved to withdraw his plea and vacate the judgment. Among the relief defendant requested was to "set *** th[e] case for trial." In addition, defendant made written allegations of ineffective assistance of counsel that were incorporated into the presentence investigation report. Thus, the court commenced an inquiry per *People v. Krankel*, 102 Ill. 2d 181 (1984), and after finding possible neglect, appointed new counsel for defendant.

¶ 20                           F. Defendant Waives His Right to Counsel

¶ 21        On February 9, 2021, defendant told the court he wanted to proceed *pro se*. The court continued the matter to the next day for defendant to "contemplate the consequences" of proceeding *pro se*. It gave him a copy of Illinois Supreme Court Rule 401 (eff. July 1, 1984) and confirmed he had a copy of the 14-count indictment.

¶ 22        The next day, defendant told the court he had read the rule and the indictment and still wished to represent himself. The court did not admonish defendant in accordance with Rule 401 at that time. Instead, it continued the matter to February 18 to verify the sentencing ranges for each of the 14 counts and to determine whether any sentences would run consecutively.

¶ 23        On February 18, 2021, the court gave the admonishments required by the rule. The court handed defendant a copy of the indictment to follow along as it read each of the 14 counts to him. The court explained the minimum and maximum penalties for each count and that convictions on some of the counts would require consecutive sentences. Defendant interrupted the proceedings,

5

stating he did not understand why the court was admonishing him on all 14 counts when he had already pleaded guilty to 2 counts. The court told defendant,

> "[I]n order for the Court to make its determination that your waiver [of counsel] is knowing, intelligent and voluntary, I intend to read each one of these counts because the Court cannot predict what direction potentially the case will go. And I want to make sure you are well aware. There is a motion to withdraw your guilty plea on file. It's been entered and continued for a period of time. And because that is out there, I want to make sure that you are understanding of all of the range of penalties for each of the counts."

¶ 24    After the court read each of the charges and explained the possible penalties, defendant persisted in his request to proceed *pro se*. The court addressed defendant personally and accepted his waiver of counsel. The court then confirmed with defendant that he wished to proceed on his motion to withdraw his guilty plea.

¶ 25    G. The Court Grants Defendant's Motion to Withdraw His Guilty Plea

¶ 26    In March 2021, defendant—now representing himself—amended and supplemented his motion to withdraw his plea and vacate the judgment. He requested an order "allowing the defendant to withdraw his plea of guilty previously entered and vacate judgment and to set this case for trial."[3]

¶ 27    Defendant also moved to dismiss for lack of jurisdiction and based on alleged due process and speedy-trial violations. In his motions, defendant acknowledged he faced 14 counts in the indictment—even going so far as to list them out—and stated he was seeking dismissal of the "14-count indictment." In April 2021, the court denied defendant's motions to dismiss.

---

[3]Defendant capitalized, bracketed, and placed quotation marks around words throughout his many *pro se* filings in this matter. It is not clear whether he was using these to emphasize certain text or for some other purpose. We have removed them to aid readability.

6

¶ 28        In May 2021, the court granted defendant's amended motion to withdraw the plea after a two-day evidentiary hearing. The court stated it was "vacating the judgment against [defendant]." The State did not ask the court to reinstate the 12 charges that had been nol-prossed per the plea agreement, and the court did not explicitly address the issue. The court asked defendant whether he wished to set the matter for trial. Defendant responded affirmatively. The court continued the matter by agreement to July 13, 2021, for trial.

¶ 29                    H. Defendant's Motions to Dismiss and for Substitution of Judge

¶ 30        In May and June 2021, defendant filed several motions seeking, among other things, dismissal and a substitution of judge. In one motion seeking dismissal, defendant asserted that (1) the State's nol-pros of the 12 counts pursuant to the plea acted as an acquittal and (2) jeopardy attached on all charges when the trial court accepted his guilty plea. According to defendant, when the court vacated his guilty plea, he was "put twice in jeopardy of all charges again." Defendant contended he could not be "retried" on "any of the charges" brought in the 14-count indictment. In another motion seeking dismissal, defendant stated the court had "not only abused [its] discretion but conspired with the State to re-open all indictment and charges against the Defendant" even though he had pleaded guilty to two charges. In his motion seeking substitution of judge, defendant asserted that on February 18, 2021, the court "re-indicted or rather re-re-admonished the defendant of all 14 counts when the defendant only plead[ed] guilty to [2 counts]."

¶ 31        The State did not file a written response to defendant's motions.

¶ 32        On June 11, 2021, the court heard defendant's motions. During argument on one of his motions, defendant complained about the *Krankel* procedure that was employed earlier in the case. The State responded, "Judge, we're way past the point of a *Krankel* hearing. The defendant has

7

been given—granted his motion to withdraw his guilty plea. The trial is set for a month from now on all counts." In ruling, the court stated,

> "The issue with regard to a *Krankel* hearing is now moot, and no longer an issue, because the Court granted the defendant's motion to withdraw the guilty plea, so that means you started over. There was an indictment on all of the original counts. Those counts were reinstated. That was stated to you during your admonishments during the course of the plea. Now we're in a position that there is a plea of not guilty on all of those counts, and based on that, and we're in a posture to proceed toward a trial, that was at the defendant's request to move to withdraw his guilty plea, so *** the Court denies the defendant's motion to dismiss for violation of due process."

Defendant told the court it did not admonish him about the consequences of withdrawing his plea and that the court did not allow him to plead anew when it vacated his plea. The court responded that it had admonished defendant at the time of his guilty plea that the nol-prossed counts would be reinstated if his motion to withdraw his plea was granted.

¶ 33     The court also denied defendant's double jeopardy motion, giving the same reason: when defendant withdrew his guilty plea, the case "started over" and at that time all 14 counts were set for trial.

¶ 34     In June and July 2021, defendant filed more motions to dismiss. In one motion, defendant sought dismissal of the eight ACSA counts (count I and counts IV through X), arguing the alleged sexual acts did not occur in Du Page County. In another motion, defendant acknowledged all 14 counts were pending against him and sought dismissal of all counts. Defendant withdrew these motions before the court ruled on them.

¶ 35                                 I. The Parties' Motions *In Limine*

8

¶ 36    In August 2021, the parties filed and litigated various motions *in limine*. In several of its motions, the State noted defendant had been charged with 14 offenses, listing each charge of the indictment with reference to the applicable statutes. In one of its motions, the State sought an order, per Illinois Rule of Evidence 410 (eff. Oct. 15, 2015), barring defendant "from introducing evidence of his September 30, 2020 plea ***, and the plea's subsequent withdrawal on May 4, 2021 and reinstatement of the counts previously *nolle prosequi*'ed per plea." In another motion, the State sought permission to admit evidence of defendant's prior felony conviction and parole status for the purpose of proving unlawful use of a weapon by a felon (counts XIII and XIV).

¶ 37    On November 22, 2021, the State placed the matter on the court's call to address various matters. During the hearing, the State tendered its proposed jury instructions, which included definitional and issues instructions for each of the indictment's 14 counts. The court asked the State whether it was intending to proceed on all 14 counts. The State told the court that it was. The court later asked defendant, "[D]o you acknowledge that the State has indicated that they're proceeding on all counts?" Defendant responded, "I understand."

¶ 38                                J. The Jury Convicts Defendant

¶ 39    Immediately before trial, the State dismissed two counts of ACSA (counts V and VI) and the counts alleging unlawful restraint and aggravated unlawful restraint (counts XI and XII). The State proceeded to trial on the remaining six counts of ACSA, one count of armed robbery, one count of aggravated kidnapping, and two counts of unlawful use of weapon by a felon. The evidence was consistent with that set forth above (*supra* ¶¶ 6-9). The jury convicted defendant of all 10 counts.

¶ 40                                K. Defendant's Posttrial Motions

9

¶ 41 Defendant filed several posttrial motions. Among his claims was that the trial court had erroneously reinstated the charges that were nol-prossed pursuant to the parties' plea agreement. At the hearing on defendant's motions, defendant acknowledged the State was allowed, upon the withdrawal of his plea, to ask the court to vacate the nol-prosses and reinstate the charges. Defendant asserted the State had never done so, meaning he had been convicted of crimes he was "not legally even charged with." Defendant contended he was "unfairly forced to defend himself against" nonpending charges, which violated his due process rights. The court denied defendant's posttrial motions.

¶ 42                                L. Sentencing

¶ 43 At the sentencing hearing, defendant objected to the proceedings on this same basis. In doing so, he addressed the Rule 401 admonishments he received on February 18, 2021. He noted, on that date, the court told him it did not know what "direction" the case was "going to go." According to defendant, this did not "apprise [him] of the fact that the State was seeking to admit the nolle processed [*sic*] charges." The court proceeded over defendant's objection and sentenced him to an aggregate prison term of 101 years.

¶ 44                       M. Defendant's Postsentencing Motion

¶ 45 Defendant moved to reconsider his sentence, again raising the due process claim and the purportedly defective admonishment the court gave defendant in February 2021. Defendant contended the purported procedural error made his sentence on the affected counts improper.

¶ 46 The court denied defendant's motion. The court accepted defendant's premise that the charges had not been formally reinstated. It concluded, however, that the record showed defendant was "on notice" the State "was proceeding on every single count that had been nolle prossed." The court pointed to defendant's numerous motions to dismiss that acknowledged the pendency of

10

those charges notwithstanding their earlier nol-pros. The court concluded defendant had not shown he was unfairly surprised or prejudiced in preparing a defense.

¶ 47                             N. Defendant's Direct Appeal

¶ 48        Defendant filed a direct appeal, and counsel was appointed to represent him. Defendant raised two challenges to his sentence. We rejected them both and affirmed. *Dalcollo*, 2024 IL App (3d) 220153-U, ¶¶ 2, 24.

¶ 49         O. The Trial Court Summarily Dismisses Defendant's Postconviction Petition

¶ 50        In April 2024, defendant petitioned for relief under the Act. He claimed his right to due process was violated when the State never formally asked the court to reinstate the nol-prossed charges yet proceeded to trial and obtained convictions on some of those charges. He also asserted his counsel on direct appeal provided ineffective assistance when counsel failed to raise the due process claim.

¶ 51        The trial court dismissed defendant's petition in a written order, finding it was frivolous and patently without merit. This appeal followed.

¶ 52                                    II. ANALYSIS

¶ 53        Defendant contends his postconviction petition established an arguable claim of ineffective assistance of appellate counsel. Specifically, defendant argues counsel should have raised a due process claim based on the State's failure to secure a new charging instrument or ask the court to reinstate the previously nol-prossed charges. Had counsel raised the claim, defendant concludes, it is at least arguable that this court would have granted him relief.

¶ 54                               A. Standard of Review

¶ 55        The Act sets forth a procedure under which a criminal defendant may assert his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois

11

Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Proceedings under the Act consist of three stages and are initiated by filing a petition. *Id.* At the first stage, the trial court must independently evaluate the petition (725 ILCS 5/122-2.1(a) (West 2024)), liberally construing its allegations to allow borderline claims to proceed (*People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48). If the court determines the petition is frivolous and patently without merit, it must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2024); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If, on the other hand, the court determines the petition states the "gist" of a constitutional violation (see *People v. Williams*, 2024 IL 127304, ¶ 15), the court must docket the petition for second-stage proceedings and appoint counsel for the defendant (725 ILCS 5/122-2.1(b), 122-4 to 122-6 (West 2024)).

¶ 56        A petition is frivolous and patently without merit when it has no arguable basis in law or fact. *Williams*, 2024 IL 127304, ¶ 17. A petition has no arguable basis when it is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. We review *de novo* the summary dismissal of a postconviction petition. *Id.* at 9.

¶ 57                    B. Ineffective Assistance of Appellate Counsel

¶ 58        Defendant claimed in his petition that appellate counsel was ineffective for failing to raise his due process claim. See *People v. Simms*, 192 Ill. 2d 348, 361 (2000) (recognizing a defendant has a constitutional right to the effective assistance of counsel on direct appeal). To survive summary dismissal, defendant's petition had to establish it was at least arguable (1) a reasonable attorney would have raised the due process claim and (2) defendant was prejudiced by his counsel's failure raise the claim. *People v. Dalgado*, 2022 IL App (2d) 210008, ¶ 26; see *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to establish either proposition is fatal to the claim. *People v. Jackson*, 2020 IL 124112, ¶ 90.

12

¶ 59 "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in [counsel's] judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Simms*, 192 Ill. 2d at 362. A defendant does not suffer prejudice when appellate counsel declines to raise a nonmeritorious issue. *Id.* Thus, when assessing an ineffective assistance claim in the appellate context, this court must examine the underlying issue's merits. *Id.*

¶ 60 Before moving to the merits, we make an important observation that informs our review of the merits—defendant fully preserved this issue for review. Accordingly, if counsel had raised the claim, it would have been the State's burden to establish the purported due process violation was harmless beyond a reasonable doubt. See *People v. McClanahan*, 191 Ill. 2d 127, 139 (2000). With this in mind, we turn to the merits.

¶ 61                                    C. Procedural Due Process

¶ 62 Defendant's underlying claim is that his right to due process was violated when the State proceeded to trial and obtained convictions on the previously nol-prossed charges without filing a new charging instrument or asking the court to vacate the nol-prosses and reinstate the charges. Because defendant is challenging the procedures employed to deprive his liberty, his claim is one of procedural due process. See *People v. Cardona*, 2013 IL 114076, ¶ 17.

¶ 63                           1. *Fundamental Right to Notice of Charges*

¶ 64 "A defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him." *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). Thus, a defendant generally may not be convicted of an offense that he has not been charged with committing. *Id.* This requirement ensures, among other things, a defendant's ability to prepare a defense. *People*

13

*v. Meyers*, 158 Ill. 2d 46, 51 (1994); see *Cardona*, 2013 IL 114076, ¶ 15 (recognizing one "fundamental requirement[ ]" of due process is the opportunity to present objections).

¶ 65                                    2. *The Effect of a Nolle Prosequi*

¶ 66          Defendant contends the nol-pros of the 12 charges pursuant to defendant's guilty plea terminated the proceedings with respect to those charges. To recommence the prosecution on any of those charges, he asserts, the State was required to either bring a new and separate proceeding via a new charging instrument or ask the court to vacate the nol-prosses and reinstate the charges. Because the State took neither action—a fact the State concedes—defendant argues the charges were never reinstated. And because the charges were not reinstated, he continues, he faced trial on charges that were not legally in existence, which violated his due process right to notice of the charges.

¶ 67          In exchange for defendant's guilty plea on counts I and III, the State nol-prossed the remaining 12 counts of the indictment. A nol-pros "is the formal entry of record by the State which denotes its unwillingness to prosecute a charge." *People v. Hughes*, 2012 IL 112817, ¶ 22. It functions like a voluntary dismissal or nonsuit in civil practice. *People v. Gill*, 379 Ill. App. 3d 1000, 1003-04 (2008) (citing *People v. Watson*, 394 Ill. 177, 179 (1946)). A charge that has been nol-prossed is no longer "legally in existence" (*People v. Stafford*, 325 Ill. App. 3d 1069, 1074 (2001)) because the nol-pros terminates the proceedings with respect to the affected charge (*Hughes*, 2012 IL 112817, ¶ 23). That said, a nol-pros is not an acquittal (*id.*), though it may have the same effect if it is entered after jeopardy has attached on the charge (*People v. Ventsias*, 2014 IL App (3d) 130275, ¶ 12). If the State nol-prosses a charge before jeopardy attaches, the State generally has the right to recommence prosecution subject only to statutory, constitutional, and equitable considerations. *Hughes*, 2012 IL 112817, ¶ 23. The parties do not dispute the State nol-

14

prossed the charges before jeopardy attached to them and, therefore, had the right to recommence prosecution on the nol-prossed charges when defendant withdrew his plea and the court vacated the judgment against him.

¶ 68                    3. *Recommencing Prosecution on Nol-Prossed Charges*

¶ 69        In the past, it was generally understood that the State could recommence prosecution on a nol-prossed charge only if it "institut[ed] *** a new and separate proceeding" (*Ferguson v. City of Chicago*, 213 Ill. 2d 94, 101 (2004)) or "file[d] a new charging instrument" (*People v. Woolsey*, 139 Ill. 2d 157, 168 (1990)). See *Stafford*, 325 Ill. App. 3d at 1073-74 (applying *Woolsey*). In *Hughes*, however, our supreme court clarified that a new and separate proceeding or a new charging instrument is not required. *Hughes*, 2012 IL 112817, ¶¶ 24-25. The court reaffirmed its acceptance of an alternative procedure—the State may simply ask the court to vacate the nol-pros and reinstate the charges. *Id.* ¶ 25 (citing *Watson*, 394 Ill. at 181).

¶ 70        According to defendant, prosecution on a nol-prossed charge may be recommenced *only* through one of the two procedures identified in *Hughes*, both of which require the State to act. Because the State does not challenge this point, we will accept for argument's sake that recommencing prosecution on a nol-prossed charge requires the State to act.

¶ 71        However, we are not convinced that *Hughes* or the other case on which defendant relies, *People v. Shinaul*, 2017 IL 120162, prescribes such a rule. In *Hughes*, the supreme court was simply asked to determine whether it was permissible for the State—as an alternative to commencing a new proceeding—to recommence prosecution on a nol-prossed charge via a motion to vacate the nol-pros and reinstate the charges. The court approved such a procedure, if it is "done before jeopardy attaches, prior to a final judgment, and in the absence of any applicable constitutional or statutory limitations which a defendant may raise." *Hughes*, 2012 IL 112817,

15

¶ 25. The court did not hold that these are the only two procedures by which a nol-pros may be vacated.

¶ 72　　　　*Shinaul* likewise did not so hold. The issue in *Shinaul* was whether the State's request to reinstate nol-prossed charges was barred by the statute of limitations (*Shinaul*, 2017 IL 120162, ¶ 15), not whether the State was restricted to the two procedures recognized in *Hughes*. In any event, the court simply cited *Hughes* as recognizing two procedures by which *the State* can recommence prosecution on nol-prossed charges. *Id.* ¶ 9 (citing *Hughes*, 2012 IL 112817, ¶¶ 24-25).

¶ 73　　　　Neither *Hughes* nor *Shinaul* prohibits the trial court from *sua sponte* vacating an order granting a nol-pros. Such a rule would conflict with a trial court's inherent authority to ensure the correct result is reached and to vacate its own orders, an authority it has even absent an authorizing statute or rule. See *People v. Mink*, 141 Ill. 2d 163, 171 (1990); *Watson*, 394 Ill. at 180-82; *Holt v. City of Chicago*, 2022 IL App (1st) 220400, ¶ 9. We have doubts about the viability of a rule that prohibits the trial court from exercising its inherent authority.

¶ 74　　　　We believe this is especially true under the circumstances present here. The parties' plea agreement was generally governed by contract law. *People v. Absher*, 242 Ill. 2d 77, 87 (2011); see *People v. Evans*, 174 Ill. 2d 320, 326-27 (1996) (noting application of contract law to plea agreements "may require tempering in some instances" to account for constitutional concerns). Defendant's motion to withdraw essentially sought rescission of the plea agreement *before* the court entered judgment on the plea. See *People v. Vara*, 2018 IL 121823, ¶ 14 (noting the final judgment in a criminal case is the sentence). Because the court allowed defendant to withdraw his plea, a complete disposition of defendant's motion required the parties to be returned to their preplea statuses (*People v. Haley*, 315 Ill. App. 3d 717, 720 (2000)), as there existed no

constitutional, statutory, or equitable bars to prevent it (*Hughes*, 2012 IL 112817, ¶ 23). See *Zahdan v. Frontline Business Enterprise Inc.*, 2024 IL App (1st) 221351, ¶¶ 39-40 (noting the remedy of rescission in contract law essentially voids the contract and requires the parties to be returned to the status quo ante the agreement). Defendant's preplea status was that he faced trial on a 14-count indictment, having pleaded not guilty.

¶ 75  D. Defendant's Claim Is Completely Contradicted by the Record

¶ 76  Despite our doubts about the viability of defendant's interpretation of *Hughes* and *Shinaul*, we will assume for argument's sake that only the State can recommence prosecution on nol-prossed charges and it can do so only through one of the procedures identified in *Hughes*. Even making this assumption, we find defendant's due process claim lacks merit.

¶ 77  Distilled, defendant's claim is that he was denied due process because he did not have formal notice the State was proceeding on the previously nol-prossed charges. Viewed through this frame, the trial court properly dismissed defendant's petition as frivolous and patently without merit. Indeed, the record flatly rebuts any claim defendant was unaware the State was proceeding on the previously nol-prossed charges, which the State had the right to do upon withdrawal of defendant's guilty plea. Moreover, the record flatly rebuts any claim that the absence of formal notice resulted in surprise, unfairness, or inadequate preparation. As such, it is not arguable defendant was prejudiced by his direct-appeal counsel's failure to raise the due process claim.

¶ 78  As noted, a criminal defendant has a fundamental due process right to notice of the charges against him. *Kolton*, 219 Ill. 2d at 359. The purpose of giving such notice "is to afford the accused protection against surprise, unfairness, and inadequate preparation." *Stafford*, 325 Ill. App. 3d at 1074.

17

¶ 79 Before defendant agreed to plead guilty, defendant faced trial on 14 felony counts that, by their mandatory consecutive nature, carried an aggregate sentencing range of 63 to 135 years. Defendant agreed to plead guilty to one count of ACSA and one count of armed robbery. In exchange, the State agreed to nol-pros the remaining 12 counts and made sentencing concessions on the armed robbery count, resulting in a sentencing range of 42 to 75 years. In September 2020, the court accepted defendant's plea and entered a written order memorializing both his convictions and the State's nol-pros of the remaining 12 counts. Before the court could impose a sentence, defendant moved to withdraw the plea and vacate the judgment and asked that the "case be set for trial."

¶ 80 After a delay caused by defendant's decision to waive counsel, the court heard and granted defendant's motion to withdraw his guilty plea, stating the "judgment against [defendant]" was vacated. The "judgment" the court was referring to can be none other than the September 2020 order memorializing the parties' plea agreement. That order consisted of two components— findings of guilt on counts I and III pursuant to defendant's guilty plea and the nol-pros of the remaining counts. The court's statement is best understood as vacating the September 2020 order in its entirety, including the findings of guilt *and* the nol-prosses.

¶ 81 Immediately after granting defendant's motion to withdraw, the court asked defendant whether he wished to set the matter for trial. Defendant told the court that he did. Admittedly, the court did not at that time inform defendant that *all* charges had been reinstated or specify that it was asking whether defendant wanted to set trial on all of them. Nevertheless, just 10 days after the court granted defendant's motion to withdraw his plea, defendant filed motions to dismiss and for substitution of judge. In the motions, defendant contended (1) when the court vacated his guilty plea, he was "put twice in jeopardy of all charges again" and he could not be "retried" on "any of

18

the charges," (2) the court had "not only abused [its] discretion but conspired with the State to re-open all indictment and charges against the Defendant," and (3) the court, on February 18, 2021, "re-indicted or rather re-re-admonished the defendant of all 14 counts when the defendant only plead guilty to [2 counts]." Defendant's own admissions thus establish he knew he was again facing all 14 counts of the indictment.

¶ 82            The June 2021 hearing and the parties' subsequent litigation make defendant's knowledge of this fact even more clear. During the June 2021 hearing, the State told the court defendant's plea had been withdrawn and "trial [was] set for a month from now *on all counts*." (Emphasis added.) Moreover, in denying defendant's motions, the court explained defendant had "started over" and the nol-prossed counts "were reinstated" when defendant withdrew his plea. Thus, by June 2021, the State expressed its intent to proceed on all counts and the court informed defendant he was facing those counts again.

¶ 83            As the case approached trial, defendant filed two more motions to dismiss that he later withdrew. In one, defendant requested dismissal of all eight ACSA counts, including the seven that had been nol-prossed per the parties' agreement. In the other, defendant acknowledged he was facing trial on 14 counts and sought dismissal of all of them.[4] The parties filed various motions *in limine*. In its motions, the State showed its intent to proceed on all 14 counts of the indictment. The State's motions listed each of the 14 counts, and in one motion, the State sought permission to admit evidence relevant only to two counts that had been nol-prossed (the counts charging unlawful use of a weapon by a felon). The State also sought an order barring the jury from hearing evidence that defendant had pleaded guilty, the guilty plea had been vacated, and certain charges

---

[4]The assertions in defendant's motions are akin to evidentiary admissions and, despite their withdrawal, demonstrate defendant's understanding the State was proceeding on all counts. See *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 749 (1993) (noting the allegations of a withdrawn or superseded pleading are evidentiary admissions).

19

had been nol-prossed and reinstated. Lastly, just two weeks before trial, defendant unequivocally confirmed he understood the State was proceeding on the nol-prossed counts.

¶ 84 The record thus shows defendant was on notice he was facing all 14 counts of the indictment for at least seven months before his December 2021 jury trial. We cannot say seven months is an inadequate time to prepare a defense to the charges defendant was facing, especially since defendant has never once identified how this purported due process violation unfairly surprised him or hampered his defense. Our own review of the record shows no apparent prejudice in this regard. Accordingly, we conclude defendant's due process claim has no merit.

¶ 85 In reaching our conclusion, we note the primary case on which defendant relies, *Stafford*, is inapposite. In *Stafford*, the defendant was charged with two counts of murder, five counts of attempted murder, and five counts of aggravated discharge of a firearm after he allegedly shot at five men, one of whom died. *Stafford*, 325 Ill. App. 3d at 1070. Before trial, in January 1996, the State nol-prossed all but the two counts of murder. *Id.* The jury convicted the defendant, and he appealed. *Id.* The appellate court reversed and remanded for a new trial, and on April 1, 1998, the supreme court denied leave to appeal. *Id.*; see *People v. Stafford*, 293 Ill. App. 3d 1135 (1998) (table) (unpublished order under Illinois Supreme Court Rule 23), *pet. for leave to appeal denied*, 177 Ill. 2d 583 (1998). Almost a year later, on March 23, 1999, the parties began selecting the jury for the defendant's retrial, and the State told the court it was proceeding on the two murder counts and the five previously nol-prossed attempted murder charges. *Stafford*, 325 Ill. App. 3d at 1071. The court allowed the State to do so. *Id.* The trial proceeded in accordance with this ruling until the jury instructions conference, when the trial court switched course and decided not to give instructions concerning the five nol-prossed attempted murder charges. *Id.* at 1071-72. The jury found the defendant guilty of both counts of murder, and he appealed again. *Id.* at 1072.

20

¶ 86    This court concluded the defendant had established a due process violation under the circumstances. *Id.* at 1074-75. The court emphasized that until the day of jury selection, defendant and his trial counsel (1) were unaware the State intended to proceed on the nol-prossed attempted murder charges and (2) had no expectation the State would proceed on charges that had been nol-prossed three years earlier and were never mentioned again. *Id.* at 1074. The defendant and his counsel therefore had no opportunity to prepare a defense to those charges. *Id.* The court concluded the defendant's rights to due process and a fair trial were violated because of the unfair surprise and his resultant inadequate opportunity to prepare a defense. *Id.*

¶ 87    The circumstances here are quite different from those in *Stafford*. We note first that the nol-prosses in *Stafford* were not conditioned on the defendant's guilty plea. Here, on the other hand, the nol-prosses were conditioned on defendant's guilty plea to counts I and III. See *People v. Smollett*, 2024 IL 130431, ¶ 58 (recognizing a distinction between nol-prosses without conditions and those conditioned on a defendant's guilty plea). Thus, the contract principles and the concern of returning the parties to their preplea status that are at play here were not present in *Stafford*. The more crucial distinction, however, is that the record here shows defendant knew the State was proceeding on the nol-prossed charges for seven months before his trial and had an adequate opportunity to prepare a defense.

¶ 88    Defendant relies on two other cases, *People v. Williams*, 2016 IL App (1st) 133812, and *People v. Monroy-Martinez*, 2024 IL App (1st) 221684-U, to support his due process claim. We find his reliance on both cases unavailing. *Williams* involved a rather unique procedural scenario not present here. And, in any event, the State did not contest the defendant's entitlement to relief, meaning the defendant's due process argument was not tested by adversarial review. See *Williams*, 2016 IL App (1st) 133812, ¶ 26.

¶ 89    *Monroy-Martinez* is likewise distinguishable in that the State agreed the defendant was entitled to relief, absolving the defendant's claim of adversarial review. *Monroy-Martinez*, 2024 IL App (1st) 221684-U, ¶ 31. Further, the nol-prosses in that case were not conditioned on the defendant's guilty plea. See *id.* ¶ 6.

¶ 90    Before concluding, we briefly address one final point. Defendant takes issue with the court's failure to admonish him that the State could reinstate the nol-prossed charges if he withdrew his plea. Defendant's argument conflates the true notice issue in this case—whether he was aware he was again facing trial on the nol-prossed charges—with another notice issue— whether he had notice that the charges might be reinstated in the event he withdrew his guilty plea.

¶ 91    To be clear, the trial court never advised defendant that the previously nol-prossed charges could be reinstated if it allowed him to withdraw his plea. The court actually stated it could not "predict what direction potentially the case will go" and, because he had moved to withdraw his plea, it "want[ed] to make sure" that defendant understood "all of the range[s] of penalties for each of the counts." While this certainly implied the nol-prossed charges could be reinstated if the plea was vacated, the court did not expressly advise defendant of that potential consequence.

¶ 92    Of course, we do not fault the trial court for not admonishing defendant that the nol-prossed charges could be reinstated if the plea was withdrawn. Rule 605(c)(4)—which requires the court to give that admonishment—is triggered only when a sentence is imposed upon a negotiated guilty plea. See Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001) (requiring certain admonishments to be given "at the time of imposing sentence" on a negotiated guilty plea). Because no sentence was ever imposed in this case, there was no need to give this admonishment. See *id.* And regardless, the record reflects defendant understood, based on the court's February 2021 admonishment, that he could face a reinstatement of all 14 counts if he withdrew his plea. In March 2021, defendant moved to

dismiss, acknowledging he was facing 14 counts and asking the court to dismiss the "14-count indictment." Defendant would not request to dismiss charges already nol-prossed unless he understood they could later be reinstated.

¶ 93 In any event, the issue raised by defendant's due process claim is whether defendant had notice of the charges on which the State was proceeding to trial such that he had the opportunity to prepare and present a defense. See *Meyers*, 158 Ill. 2d at 51; *Stafford*, 325 Ill. App. 3d at 1074. Even if the nol-prossed charges were not pending on paper, the record establishes beyond a reasonable doubt defendant had actual notice the State was proceeding on those charges and was not prejudiced in preparing his defense. See *McClanahan*, 191 Ill. 2d at 139. Defendant's due process claim therefore has no merit. However, we caution the State that it would be wise to always avail itself of one of the procedures identified *Hughes* when it wishes to recommence prosecution on charges that were nol-prossed in exchange for a later-withdrawn guilty plea.

¶ 94 Because defendant's due process claim has no merit, it is not arguable that defendant was prejudiced by his appellate attorney's failure to raise the claim on direct appeal. See *Simms*, 192 Ill. 2d at 362. Accordingly, the trial court properly dismissed defendant's petition as frivolous and patently without merit.

¶ 95 III. CONCLUSION

¶ 96 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 97 Affirmed.

*People v. Dalcollo*, 2026 IL App (3d) 240437

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-CF-698; the Hon. Ann Celine O'Hallaren Walsh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Gilbert C. Lenz, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for the People. |